# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDEA L.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-01879 (GMH) |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Judea L. filed this action seeking to reverse the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g).  Plaintiff alleges that the Administrative Law Judge ("ALJ") who handled her claim improperly assessed her Residual Functional Capacity ("RFC").  She seeks reversal of the Commissioner's decision and a judgment that she is entitled to benefits or, in the alternative, remand for a new administrative hearing.  The Commissioner argues that the ALJ's decision should be affirmed.  Upon consideration of the parties' briefs and the administrative record, the Court denies Plaintiff's motion for judgment of reversal and grants Defendant's motion for judgment of affirmance.[2]

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Sept. 15, 2023).

[2] The relevant docket entries for purposes of this Memorandum Opinion are:  (1) the administrative record (ECF Nos. 13–15), (2) Plaintiff's motion for judgment of reversal (ECF No. 21), (3) Defendant's motion for judgment of

# I.    BACKGROUND

## A.    Statutory and Regulatory Framework

To be eligible for SSI benefits under the Social Security Act, the SSA must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five-step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[3]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[4]

Step three:  whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

After step three, the ALJ determines the claimant's residual functional capacity ("RFC")—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations;

---

affirmance and opposition to Plaintiff's motion for judgment of reversal (ECF No. 22), and (4) Plaintiff's combined opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition (ECF 26).  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[3] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security disability insurance benefits ("DIB") claims).  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[4] An impairment or combination of impairments is "severe" if it "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

Step four:  whether the impairment prevents the claimant from performing his or her past relevant work;[5] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC, is unable to perform another job available in the national economy.[6]

*See* 20 C.F.R. § 416.920; *see also* 20 C.F.R. § 404.1520 (outlining the five-step sequential inquiry for DIB claims); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability. Affirmative answers to questions 3 or 5 establish disability."  *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation.  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy the claimant can perform.  *Id.*  In making this determination, an ALJ may call a vocational expert to testify at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that exists in the national economy.[7]  *Id.* at 90.

---

[5] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1); *see also* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is required.  20 C.F.R. § 416.920(a)(4)(iv); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[6] At the fifth step, the ALJ may, "'[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines'" (also known as "the grids") to determine whether the claimant is disabled.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.'"  *Id.* (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). However, when a claimant has additional limitations beyond those contemplated by the Grids, the ALJ cannot rely on the Grids alone to establish non-disability.  *Id.*  In such cases, the testimony of a vocational expert ("VE") is generally required.  *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

[7] In determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a VE may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

B.    **Plaintiff's Disability Claims, Procedural History, and the Administrative Hearing**

Plaintiff was born on October 22, 1961, completed 2 years of college education, and last worked as a personal care attendant at a nursing facility.  ECF No. 13-5 at 2; ECF No. 13-6 at 4.  Plaintiff reported that he stopped working because of health issues in December 2017.  ECF No. 13-5 at 2.

Plaintiff filed applications for DIB on June 5, 2019, and for SSI benefits on June 7, 2019.[8]  ECF No. 13-5 at 2, 9.  She claimed that she had been disabled since December 15, 2017, due to shortness of breath, a heart condition, and a dislocated spine.  ECF No. 13-5 at 2; ECF No. 13-6 at 3.  Plaintiff later claimed additional impairments, including abdominal swelling, brain fog, extreme exhaustion, and left arm pain.  ECF No. 13-6 at 35.  The SSA initially denied her claims for benefits in May 2020, ECF No. 13-4 at 4, and affirmed that decision in July 2020, *id.* at 10.  Plaintiff then requested a hearing before an ALJ, which was held telephonically on March 8, 2021.   ECF No. 13-2 at 39–70.

At the hearing, the ALJ took the testimony of a VE and Plaintiff.  *Id.*  First, the VE classified the Plaintiff's past work history according to the DOT.   *Id.* at 47–49.  That work included positions as a salesclerk, counter attendant at a lunchroom or coffee shop, counter clerk, and salesperson.  *Id.*  The ALJ then posed a series of hypothetical questions to the VE.  The first hypothetical asked whether someone of Plaintiff's age, education, and work experience who could "occasionally" lift and carry 50 pounds and "frequently" lift and carry 25 pounds; could sit, stand, and walk about six hours in an eight-hour workday; could "frequently" climb ladders, ropes, and scaffolds; could "frequently" balance, kneel, crouch, and crawl; and could not tolerate concentrated exposure

---

[8] The Court notes the ALJ's opinion and the memoranda supporting the motions for reversal and affirmance state Plaintiff applied for DIB and SSI on June 5, 2019, while the record shows Plaintiff applied for DIB June 5, 2019, and SSI on June 7, 2019.  *See* ECF No. 13-5 at 2, 9.

4

to extreme cold, fumes, odors, dust, gases, poor ventilation, and other such hazards, could perform Plaintiff's past work.[9]  *Id*. at 49–50.  The VE determined that this hypothetical person could perform all of Plaintiff's relevant past work as generally performed, and all but Plaintiff's work as a counter clerk as actually performed.  *Id*. at 50.  The second hypothetical was the same as the first, except that the hypothetical person could only "occasionally" lift and carry twenty pounds and could "frequently" lift and carry ten pounds.  *Id*. at 50–51.  The VE determined that this hypothetical person could perform all of Plaintiff's relevant past work as generally performed, and all but Plaintiff's work as a salesclerk and counter clerk as actually performed.  *Id*. at 51.  The third hypothetical was the same as the second but with the added restriction that the hypothetical person would require the ability to alternate between sitting and standing about every 30 minutes, such that the person would be sitting a total of about four hours and standing and walking a total of about four hours in a given eight-hour workday.  *Id*. at 51.  The VE determined that this hypothetical person would be unable to perform any of Plaintiff's past work, either as generally or actually performed, and that the hypothetical person would lack transferable skills to other work and would be unable to directly enter into skilled work.  *Id*. at 51–52.  The fourth hypothetical was the same as the second, with the addition that the person would be limited to performing simple one- to four-step routine repetitive tasks.  *Id*. at 52.  The VE determined that this hypothetical person could perform only Plaintiff's past work as a counter attendant in a lunchroom or coffee shop, either as generally or as actually performed.  *Id*. at 53.  The VE also testified that the hypothetical person could spend only up to ten percent of a workday off task and could be absent from work only one

---

[9] "Occasionally" and "frequently" are defined terms.  "'Occasionally' means occurring from very little up to one-third of the time"; thus, an individual who could, for example, "occasionally" lift and carry 50 pounds could do so for up to "about 2 hours of an 8-hour workday."  Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).  "'Frequent' means occurring from one-third to two-thirds of the time"; thus, an individual who could lift and carry 25 pounds "frequently" could do so "for a total of approximately 6 hours of an 8-hour workday.  *Id*. at *6.

day per month.  *Id*.  Plaintiff's counsel also posed a hypothetical to the VE regarding an individual who could lift less than ten pounds either frequently or occasionally, and who could sit for two hours, walk for two hours, and stand for less than two hours.  *Id*. at 54.  The VE determined that a person with such limitations would be unable to perform either Plaintiff's past work or other work. *Id.*

Following the VE's testimony, the ALJ took testimony from Plaintiff.  In her past work in retail, Plaintiff testified that she stood for eight hours per day while stocking shelves, working a register, and picking up boxes weighing up to 50 pounds.  *Id*. at 56–57.  In her past work as a barista, Plaintiff made customized drinks and cleaned the facilities, including the restrooms, patron areas, and food storage.  *Id.*  Such work included lifting up to 20 pounds and regular stooping and crawling.  *Id*. at 57.  Plaintiff testified that she stopped working in 2017, mainly due to her heart condition which caused frequent palpitations and attendant fatigue and shortness of breath.  *Id*. at 57–58.  She further testified to experiencing palpitations daily, varying from one to seven times per day in frequency.  *Id*. at 58. She said her doctor informed her that the medication prescribed to treat her palpitations causes fatigue; she also stated that she has suffered from frequent bouts of dizziness and brain fog since beginning her prescription.  *Id*. at 58–61.  She testified her fatigue symptoms varied from day to day, and that some days she was unable to perform functions beyond toileting and walking short distances, and otherwise must lay down.  *Id*. at 61–62.  She claimed that she was unable to leave the apartment approximately fifteen out of every 30 days due to her fatigue symptoms.  *Id*. at 68.  Plaintiff said that she had been diagnosed with shortness of breath, that she experienced symptoms daily, and that she had been prescribed a CPAP machine but did not use it due to an allergic reaction.  *Id*. at 62–63.  She further testified she had been diagnosed with anxiety that made public life difficult, for which she was not currently taking medication.  *Id*.

at 63–64.  Plaintiff also stated that she suffered from nerve disturbances that caused a crawling sensation under her skin.  *Id*. at 64–65.  She testified that she suffered from lipoma of the neck and a herniated disk in her spine, symptoms she first noticed in her past retail work; however, she was still able to take public transportation when needed.  *Id*. at 66–67.  Although Plaintiff also suffered from a knee buckling issue, she went for short walks daily whenever she had sufficient energy to leave her apartment.  *Id*. at 68–69.  Finally, Plaintiff testified to having a rotator cuff issue affecting her shoulder movement, as well as  persistent hip pain, and she attends physical therapy for the latter.  *Id*. at 69–70.

C.      **The ALJ's Decision**

The ALJ issued his decision on July 7, 2021, ultimately finding Plaintiff was not disabled and could perform her prior work as a counter attendant at a lunchroom or coffee shop and was otherwise capable of medium work with certain additional restrictions.  *Id*. at 26, 31.

1.      Substantial Gainful Activity, Severe Impairment, and the Listings

At step one of the five-part analysis outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2017, the alleged onset date of her disability.  *Id.* at 22.  At step two, the ALJ determined that Plaintiff had the following severe impairments:  coronary artery disease, hypertension, cervical spine degenerative disease, a cervical strain, scoliosis, lumbar spine degenerative disc disease, facet hypertrophy, spondylolisthesis, a trapezius strain, myofascial pain syndrome, macromastia, and menopause.  *Id.*  The ALJ also determined that Plaintiff had the following non-severe impairments: achilles tendinitis, neck and arm pain, obesity, gastroesophageal reflux disease, hiatal hernia, hemorrhoids, flatulence, eructation, gas pain, pneumonia, sleep apnea, bronchitis, left sided facial pain, cerumen impaction, prior head injury, carotid artery stenosis, dyslipidemia, dermatitis, body rash, skin atrophy, fungal infection,

7

post inflammatory hyperpigmentation, contact dermatitis, neurodermitis, telogen hair loss, xerosis cutis, lipoma of the neck, high grade squamous intraepithelial lesion, anemia, infertility, and anxiety. *Id.* at 22–25.

In assessing Plaintiff's anxiety, the ALJ considered the four broad functional areas set out in SSA regulations, including remembering and applying information, interacting with others, concentrating, and adapting or managing oneself. *Id.* at 24–25. In concluding that Plaintiff's anxiety was a non-severe impairment, the ALJ considered objective medical evidence finding Plaintiff to be "alert and oriented x3", cooperative, and able to get along with authority figures, as well as Plaintiff's ability to pay bills, count change, handle a savings account, shop using the computer, prepare simple meals, clean, use public transportation, and watch television. *Id.*

At step three, the ALJ found that Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the severity of any of the impairments in the Listings. *Id.* at 25. Specifically, he considered the impairments in Listing 1.00 for musculoskeletal disorders, Listing 4.00 for cardiovascular system, and Listing 6.00 for genitourinary disorders. *Id.* As to Listings 1.15 (disorders of the skeletal spine), 1.16 (lumbar spinal stenosis), and 1.18 (abnormality of a major joint), the ALJ found the record showed a full range of motion in Plaintiff's extremities, intact strength and sensation throughout, normal muscle tone, negative straight leg raising, and a fluid gait. *Id.* at 25–26. As to listings 4.04 (ischemic heart disease) and 4.05 (recurrent arrhythmias), the ALJ found the medical record showed regular heart rate and rhythm, no obvious cardiopulmonary distress, and only occasional premature ventricular contractions. *Id.* at 26. The ALJ also noted that no medical consultant designated by the Commissioner had concluded that Plaintiff's impairments medically equaled a listing. *Id.* at 25. The ALJ next turned to Plaintiff's RFC.

2.      Plaintiff's RFC

The ALJ found that Plaintiff had the RFC to perform "medium work," except that she could only occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds, could sit about six hours in an eight-hour workday, could stand and/or walk about six hours in an eight-hour workday, and could frequently climb ladders, ropes, scaffolds, balance, kneel, crouch, and crawl, and occasionally stoop.   Further, Plaintiff must avoid concentrated exposure to extreme could, fumes, odors, dusts, gases, poor ventilation and hazards (machinery heights, etc.).[10]  *Id*. at 26.

In determining Plaintiff's RFC, the ALJ stated he had considered "all symptoms" and the extent to which those symptoms were consistent with the record evidence, including the objective medical evidence and medical opinions.  *Id.*  In considering Plaintiff's symptoms, the ALJ undertook a two-step process.  *Id.*  First, he found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  *Id.* at 27.  Second, however, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent" with the evidence in the record.  *Id.*

In reaching that conclusion, the ALJ first summarized the objective medical evidence.  *Id.* Starting with Plaintiff's musculoskeletal pain, the ALJ found that physical examinations revealed full range of motion of the neck with no neurological deficits, full range of motion of all extremities

---

[10] According to the regulations, medium work requires the ability to

> [l]ift[] no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting and carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

SSR 83-10, 1983 WL 31251, at *6.

with intact strength and sensation, a normal cervical spine, and only mild degenerative changes in the lumbar spine. *Id.* As to Plaintiff's trapezius strain, the ALJ found that physical examinations revealed a full range of motion of all extremities with no focal neurological deficits, intact strength and sensation throughout the bilateral upper extremities, and the ability to perform normal rapid alternating movements with upper extremities. *Id.* at 27–28. As to Plaintiff's coronary artery disease, hypertension, chest tightness, and shortness of breath, the ALJ found that physical examinations revealed a regular heart rhythm and blood pressure, strong and equal distal pulses in all limbs, only occasional premature ventricular contractions, and no obvious cardiopulmonary distress. *Id.* at 28. As to Plaintiff's macromastia, menopause, and fatigue, the ALJ found that physical examinations revealed Plaintiff to be "alert and oriented x3", that Plaintiff denied any gynecological complaints, and that a mammogram and further physical examination revealed benign findings with no evidence of mass, architectural distortions, suspicious microcalcifications, or palpable breast masses. *Id.* As to Plaintiff's abdominal swelling, the ALJ found that physical examinations revealed a soft, nontender abdomen with no distension or palpable masses, normal bowel sounds, no tenderness to palpitation, no evidence of mass lesions, and a normal mucosal fold pattern. *Id.* As to Plaintiff's brain fog and "memory/concentration" problems, the ALJ found that physical examinations revealed Plaintiff to be "alert and oriented x3" with "intact cranial nerves II-XII" and no focal neurological deficits. *Id.*

The ALJ next found that Plaintiff had taken a conservative approach to treatment for her alleged symptoms, and that Plaintiff's activities of daily living were inconsistent with her subjective complaints. *See id.* at 28–29. As to treatment, the ALJ noted that although Plaintiff alleged various side effects from her medication, the medical records did not include any significant complaints related to ongoing side effects or recurrent requests for medication adjustments due to side

effects or ineffectiveness.  *Id.* at 28.  Additionally, the ALJ stated that there was no evidence Plaintiff had been prescribed other "pain/treatment modalities", such as a neck or back brace, nor had Plaintiff sought surgical intervention for any of her impairments.  *Id.* at 29.  The ALJ further noted that Plaintiff had not sought treatment from a mental health professional or required inpatient hospital confinement for her mental impairment.  *Id.*  As to Plaintiff's activities of daily living, the ALJ found that although Plaintiff testified that she spent the majority of the day lying down, she also reported being able to prepare simple meals, shop in-store and by computer, clean, watch television, pay bills, use public transportation, go outside every day except in extreme weather, visit the library, and participate in yoga.  *Id.*

The ALJ then turned to the medical opinion evidence.  *Id.*  At the outset, the ALJ explained that while he fully considered the opinion evidence and prior administrative medical findings, he did not "defer or give and specific evidentiary weight, including controlling weight" to the opinion evidence in accordance with SSA regulations.  *Id.*  Instead, the ALJ evaluated each medical opinion and explained its persuasive value based on its consistency with the record and its supportability.  Applying that rubric, the ALJ found Dr. Venkataraman's opinion that Plaintiff could perform medium work with unlimited balancing, stooping, kneeling, crouching, and climbing of stairs, frequent crawling and climbing of ladders, ropes, and scaffolds, no concentrated exposure to fumes, odors, dusts, and poor ventilation, to be somewhat persuasive given it was consistent with the objective findings from physical examinations showing normal muscle tone, sensation, and range of movement discussed previously.  *Id.*  The ALJ found Dr. Pinder's opinion that Plaintiff could perform medium work with unlimited balancing, crouching, crawling, climbing of stairs ramps and stairs, frequent kneeling and climbing of ladders, ropes, and scaffolds, occasional

stooping, and no concentrated exposure to extreme cold, fumes, odors, dusts, gases, or poor ventilation, to be somewhat persuasive for similar reasons. *Id.* at 29–30.

On the other hand, the ALJ found the opinions of Dr. Nachbar and Nurse Practitioner Tay to be unpersuasive. *Id*. at 30. Dr. Nachbar opined that Plaintiff's anxiety was not of such severity as to prevent Plaintiff from engaging in substantial gainful activity and that it did not meet the twelve-month durational requirement. *Id.* The ALJ found the latter part of this opinion to be unpersuasive since the objective medical evidence "clearly establishe[d]" a history of ongoing anxiety, even while such anxiety only constitutes a non-severe impairment. *Id*. Nurse Practitioner Tay was of the opinion that Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace, a mild restriction of activities of daily living, mild episodes of decompensation at work, and no difficulties in maintaining social functioning. *Id*. The ALJ found this opinion unpersuasive and inconsistent with the totality of evidence, given Plaintiff's ability to pay bills, count change, handle a savings account, use a checkbook, shop using the computer, prepare simple meals, clean, and watch television. *Id*. Nurse Practitioner Tay also opined that Plaintiff was limited to lifting and carrying less than ten pounds, sitting for at least two hours, walking for at least two hours, and standing for less than two hours in an eight-hour workday. *Id*. The ALJ found this opinion lacked supporting clinical or objective findings and was inconsistent with the totality of the evidence given that physical examinations of Plaintiff revealed regular heart rate and rhythm, strong and equal distal pulses in all limbs, regular blood pressure, and no obvious cardiopulmonary distress. *Id*. Based on this review of Plaintiff's treatment history, the objective clinical findings, her subjective complaints, her activities of daily living, and the medical opinions in the record, the ALJ concluded that Plaintiff had the capacity to perform medium work with the additional limitations set forth in the RFC.

3.      Conclusion of the Five-Step Sequential Inquiry

At step four, the ALJ concluded—based on the VE's testimony and the RFC finding—that Plaintiff was capable of performing her past relevant work, as actually and generally performed, as a counter attendant at a lunchroom or coffee shop. *Id*. at 31. Accordingly, the ALJ did not reach step five of the analysis.

The ALJ's decision became the final decision of the Commissioner when the SSA's Appeals Council denied Plaintiff's request for review on May 18, 2022. *Id.* at 2–5.

## II.      LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). Ultimately, the substantial evidence standard is a "low bar," *Louisiana Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ," *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995); *see also Biestek v. Berryhill*, 587

13

U.S. __, __, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other con-texts, the threshold for such evidentiary sufficiency [under the substantial evidence standard] is not high.").  The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own." *Crosson*, 907 F. Supp. At 3; *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law").  However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhib-its[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)).  In applying this standard, courts "must also be mindful of the harmless-error rule.  Consequently, even if [the court] per-ceive[s] error," it must "affirm the Commissioner's decision unless the error is prejudicial." *Saun-ders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021).

Finally, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's

14

judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

### III.    DISCUSSION

Plaintiff's primary argument for remand is that the ALJ erroneously assessed her RFC in several respects.  ECF No. 21-1 at 3–6, 9, 13.  First, she argues the ALJ failed to set forth a narrative discussion providing a "logical bridge" as to how the relevant evidence supported each conclusion. *Id*. at 6.  Second, she argues the ALJ failed to adequately address the Plaintiff's "non-severe" impairments.  *Id*. at 9.  Third, she argues the ALJ failed to properly consider the combination of her impairments in forming her RFC.  *Id*. at 13.  The Court finds Plaintiff's arguments unavailing. It will therefore deny Plaintiff's motion and grant Defendant's motion.

### A.    The ALJ's Assessment of Plaintiff's RFC is Supported by Substantial Evidence.

As an initial matter, Plaintiff introduces her argument by quoting extensively from Social Security Ruling 96-8p, which states that "[an] RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before the RFC may be "expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy."  ECF No. 21-1 at 4–6 (emphasis omitted) (quoting SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).  She asserts that the errors here spring from the ALJ's failure to perform the function-by-function analysis.  ECF No. 21-1 at 5–6.  To the extent that Plaintiff contends as a distinct argument that an ALJ's opinion must include an analysis that addresses in writing each and every work-related function listed in SSR 96-8p, that position has been repeatedly rejected by this Court.  "Although the language of SSR 96–8p requires that the ALJ's RFC assessment 'must address . . . the remaining exertional . . . capacities of the individual,' this does not require written articulation of all seven strength demands"; instead, "[t]he

15

narrative discussion requirement simply requires the ALJ to explain an 'individual's ability to perform sustained work activities in an ordinary work setting on a regular [and continuing] basis,' and 'describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.'" *Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008) (ellipses in original) (emphasis omitted) (quoting SSR 96-8p, 1996 WL 374184, at *5, 7); *see also Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) ("This court has found that when 'the ALJ provided a thorough narrative discussion of [Plaintiff's] limitations,' and has built a 'logical bridge' from the evidence to his conclusion, the RFC analysis does not require 'written articulation of all seven strength demands.'" (alteration in original) (quoting *Banks*, 537 F. Supp. 2d at 85)); *Nsiah v. Saul*, No. 19-cv-42, 2021 WL 372784, at *14 (D.D.C. Feb. 3, 2021) ("[A] narrative discussion 'is sufficient for the ALJ to fulfill [his] obligation to complete a function-by-function analysis that allows the [court] to conduct meaningful review.'" (second and third alterations in original) (quoting *Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017))); *Simmons v. Saul*, No. 18-cv-1293, 2019 WL 12251882, at *13 (D.D.C. Sept. 30, 2019) ("To the extent that Plaintiff argues that the absence of explicit and separate evaluations of each of the relevant strength categories in itself requires remand (or reversal), he is mistaken."), *report and recommendation adopted*, 2019 WL 12251883 (D.D.C. Oct. 22, 2019).  Indeed, although the D.C. Circuit has not addressed that specific question, *see Banks*, 537 F. Supp. 2d at 84, a number of other federal Courts of Appeals have indicated that "an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms," *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (collecting cases from the Sixth, Seventh, Eighth, and Ninth Circuits); *see also Jamil D. v. Kijakazi*, No. 21-cv-464,

2022 WL 910334, at *9 n.9 (D.D.C. Mar. 29, 2022) (same).  That threshold issue having been resolved, the Court considers each of Plaintiff's three arguments in turn.

> 1.    The ALJ Properly Developed a Logical Bridge as to How the Relevant Evidence Supported Each Conclusion of the RFC.

Again, the ALJ determined that Plaintiff had the RFC to perform "medium work," except that she could only occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; could sit about six hours in an eight-hour workday; could stand and/or walk about six hours in an eight-hour workday; and could frequently climb ladders, ropes, scaffolds, balance, kneel, crouch, and crawl, and occasionally stoop.  Further, the RFC required the avoidance of concentrated exposure to extreme could, fumes, odors, dusts, gases, poor ventilation and hazards (machinery heights, etc.).  *Id*. at 26.  Plaintiff contends the ALJ did not provide sufficient explanation—or a "logical bridge"—between the record evidence and the RFC.  ECF No. 21-1 at 6–8. Plaintiff's argument is without merit.

An ALJ must consider all evidence in the administrative record when reaching a conclusion regarding a claimant's RFC, including the individual's subjective allegations and description of her own limitations, as well as the medical records and medical source opinions.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  In doing so, "an ALJ need not articulate his reasons for rejecting every piece of evidence" in the administrative record.  *Lane-Rauth*, 437 F. Supp. 2d at 67.  Rather—as noted above—an ALJ is required only to "provide a thorough narrative discussion of [a claimant's] limitations" and "buil[d] a 'logical bridge' from the evidence to his conclusion."  *Contreras,* 239 F. Supp. 3d at 207 (quoting *Banks*, 537 F. Supp. 2d at 85); *see also Jamil D.*, 2022 WL 910334, at *9 n. 9; *Nsiah*, 2021 WL 372784, at *14.

Here, that "logical bridge" is readily discernible from the ALJ's decision.  The ALJ began the RFC analysis by comparing Plaintiff's alleged symptomatology—including musculoskeletal

pain, a trapezius strain, coronary artery disease, hypertension, chest tightness, shortness of breath, macromastia, menopause, fatigue, abdominal swelling, brain fog, and memory and concentration problems—to the objective medical findings discussed previously.  ECF No. 13-2 at 27–28.  Next, as in *Nsiah*, the ALJ "discussed how the evidence in the record conflicted with [Plaintiff's] subjective complaints and explained why he weighed [her] subjective complaints as he did."  2021 WL 372784, at *15.  In assessing Plaintiff's subjective complaints, the ALJ considered Plaintiff's conservative treatment history and found that it, combined with her admitted activities of daily living, were inconsistent with her allegations of disabling impairments.  ECF No. 13-2 at 29.

The ALJ next evaluated the medical findings and opinions in the record, including those from Plaintiff's medical sources.  *Id.* at 29–31. As in *Banks*, the ALJ "explained why [he] discounted certain opinions" and found others to be persuasive.  535 F. Supp. 2d at 85.  Specifically, in assessing Dr. Venkataraman's opinion that Plaintiff could perform medium work with unlimited balancing, stooping, knelling, crouching, and climbing of stairs, frequent crawling and climbing of ladders, ropes, and scaffolds, and no concentrated exposure to fumes, odors, dusts, and poor ventilation, the ALJ found the opinion to be "somewhat persuasive" given it was consistent with objective medical findings demonstrating Plaintiff's full range of motion in all extremities with intact strength and sensation, normal muscle tone, 5/5 strength in all muscle groups in the upper and lower extremities, a fluid gait, and only mild degenerative spinal changes.  ECF No. 13-2 at 29; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").  Similarly, in assessing Dr. Pinder's opinion that Plaintiff could perform medium work with similar exertional and non-exertional modifications as those

recommended by Dr. Venkataraman, the ALJ found the opinion to be "somewhat persuasive" be-cause it was, like Dr. Venkataraman's, consistent with objective medical findings in the record. ECF No. 13-2 at 29–30.   Accordingly, the ALJ included in Plaintiff's RFC a restriction to medium work with exertional and non-exertional limitations similar to those proposed by Drs. Venkata-raman and Pinder, and consistent with the limitations for medium work prescribed by SSA regu-lations.  *Id.* at 26; *see also* SSR 83-10, 1983 WL 31251, at *6 (stating that a full range of medium work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds).

By contrast, the ALJ explained he found Dr. Nachbar's opinion that Plaintiff's anxiety disorder did not meet the twelve-month durational requirement to be unpersuasive because the objective medical evidence clearly demonstrated a history of ongoing anxiety.  *Id.* at 30.  None-theless, the ALJ found that examinations had consistently revealed Plaintiff to be cooperative, "alert and oriented x3" with "appropriate mood, affect and thoughts."  *Id.*  Accordingly, although the ALJ found that Plaintiff had a medically determinable anxiety disorder, he deemed it non-severe and did not include any limitations in the RFC with respect to anxiety.  *Id.*

Similarly, the ALJ explained he found Nurse Practitioner Tay's opinion that Plaintiff had moderate difficulties maintaining concentration, persistence, and pace to be "not persuasive" be-cause it was inconsistent with the "totality of the evidence," such as Plaintiff's admitted ability to handle the activities of daily living, including paying bills, counting change, maintaining a savings account, using a checkbook and money orders, shopping using a computer, preparing simple meals, cleaning, and watching television.  *Id.*  The ALJ also explained that multiple examinations

revealed Plaintiff to be "alert and oriented x3." *Id.* Accordingly, the ALJ include not restrictions in the RFC related to concentration, persistent or pace.[11] *Id.* at 26.

The ALJ also did not adopt Nurse Practitioner Tay's recommendation that Plaintiff be limited to lifting and carrying less than ten pounds, sitting for at least two hours, walking for at least two hours, and standing for less than two hours in an eight-hour workday. As he explained, the ALJ found that opinion "not persuasive" because Nurse Practitioner Tay "submitted no clinical or objective findings in support of her opinion and she failed to explain why such limitation were appropriate." *Id.* at 30. The ALJ also found the opinion to be "inconsistent with the totality of the evidence." *Id.* As an example, the ALJ noted that although Nurse Practitioner Tay stated that Plaintiff had heart palpitations, chest pain and shortness of breath, multiple physical examinations revealed that she had a regular heart rate, normal blood pressure, and did not appear in any obvious cardiopulmonary distress. *Id.* at 30-31. Accordingly, the ALJ did not include in the RFC any of Nurse Practitioner Tay's recommended physical limitations.

In conclusion, after weighing Plaintiff's subjective complaints, her activities of daily living, her treatment history, the objective medical findings, and the medical opinion evidence, the ALJ found that Plaintiff's "impairments and restrictions caused by them would not prevent [her] from performing" medium work with the additional exertional and non-exertional limitations included in the RFC. ECF No. 13-2 at 31. Together, the Court finds the ALJ's RFC determination supported by substantial evidence as required, and his analysis of the record evidence more than sufficient to provide the requisite "logical bridge" between his RFC determination and the record

---

[11] By contrast, the ALJ's consideration of the evidence and evaluation of Plaintiff's physical and mental impairments is unlike the ALJ's analysis found wanting in *Contreras*, where the ALJ neglected to consider the claimant's mental impairments and the effects of those impairments on the claimant's activities of daily living at all. *See Contreras*, 239 F. Supp. 3d at 209.

evidence.  Stated another way, the ALJ reasonably explained how he formulated Plaintiff's RFC

such that this Court can understand how he reached his conclusions.[12]  Plaintiff has also failed to

show that a the RFC formulated by the ALJ is not sufficiently supported.  *See* 20 C.F.R. §§

404.1512(a)(1), 416.912(a)(1) ("In general, you have to prove to us that you are blind or disa-

bled."); *Carroll v. Saul,* No. 19-cv-391, 2020 WL 4754680, at *15 (D.D.C. Jan. 9, 2020) (plaintiff

bears the burden of proving disability), *report and recommendation adopted*, 2020 WL 4750238

(D.D.C. Aug. 17, 2020).

      For all these reasons, Plaintiff's motion for remand on this basis will be denied.

      2.      The ALJ Appropriately Considered Plaintiff's Non-Severe Impair-
               ments and Plaintiff Has Made No Showing that any Alleged Omis-
               sion Thereof by the ALJ is Harmful Error.

      Plaintiff also contends the ALJ's RFC assessment after step three failed to address all of

Plaintiff's impairments which the ALJ found non-severe at step two, namely her Achilles tendini-

tis, neck and arm pain, obesity, gastroesophageal reflux disease, hiatal hernia, hemorrhoids, flatu-

lence, eructation, gas pain, pneumonia, bronchitis, sleep apnea, left sided facial pain, cerumen

impaction, status post head injury, carotid artery stenosis, dyslipidemia, history of dermatitis, body

rash, skin atrophy, fungal skin infection, post inflammatory hyperpigmentation, contact dermatitis,

neurodermitis, a telogen, hair loss, xerosis cutis, lipoma of the neck, high grade squamous

---

[12] Plaintiff's citations to *Jackson v. Kijakazi*, No. 18-cv-912, 2022 WL 2981768 (D.D.C. July 28, 2022), and *Williams v. Colvin*, 134 F. Supp. 3d 358 (D.D.C. 2015), are inapposite.  In *Jackson*, this Court remanded because "at no point [did] the ALJ 'describ[e] how the evidence supports[,] [the plaintiff's] residual functional capacity determination" and because the ALJ's "decision never connects the summarized medical evidence to any of [the plaintiff's] capacities." 2022 WL 2981768, at *6 (second and third alterations in original) (quoting SSR 96-8p, 1996 WL 374184, at *7). Such deficiencies are absent from the ALJ opinion at issue, as the ALJ described how the evidence supports the RFC determination and connected the record evidence to Plaintiff's RFC limitations.  Similarly in *Williams*, this Court remanded because the ALJ found four exertional limitations and accompanied "those findings with a thorough recita-tion of [the plaintiff's] testimony and a summary of his medical history, [without indicating] how the evidence recited supports each of his findings." 134 F. Supp. 3d at 364.  Unlike in *Williams*, the ALJ here provided more than mere recitation of the medical history, explaining how the RFC limitations related to the record evidence.

intraepithelial lesion, anemia, infertility, and anxiety.  ECF No. 21-1 at 9–12.  Again, Plaintiff's argument is not persuasive.

Plaintiff misapprehends the requirements imposed on an ALJ.  She faults the ALJ for failing to "*address*" Plaintiff's non-severe impairments when formulating her RFC, ECF No. 21-1 at 9, 11-12 (emphasis added), but SSR 96-8p provides only that "in assessing RFC, the adjudicator *must consider* limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  1996 WL 374184, at *5 (emphasis added); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (the SSA "will *consider* all of [a claimant's] medically determinable impairments of which we are aware, including . . . medically determinable impairments that are not 'severe[.]'" (emphasis added)).  Thus, SSR 96-8p requires the ALJ's consideration of non-severe impairments, not—as Plaintiff would have it—that they be explicitly addressed in the ALJ's opinion when formulating the RFC.  *See Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) ("While the administrative law judge did not specifically address [the plaintiff's] chronic pain, reflux, and hypothyroidism in the residual-functional-capacity analysis, neither our caselaw nor the regulations explicitly require this.  The judge is only required to *consider* these non-severe impairments."); *see also, e.g.*, *Manning v. Colvin*, 182 F. Supp. 3d 1156, 1164 (D. Colo. 2016) ("[W]hile the regulations obligate the ALJ to *consider* whether the plaintiff's severe and non-severe impairments in combination are severe, they do not require him specifically to *address* all such factors.").  Here, the ALJ cited SSR 96-8p in the legal standards section of his opinion and stated that in "making [the RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe."  ECF No. 13-2 at 21.  More, the ALJ stated at the outset of his RFC analysis that he had "careful[ly] consider[ed] . . . the entire record," and that he had "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* Courts have relied upon such statements to find that the ALJ properly considered "all [the plaintiff's] impairments, including those that the ALJ deemed non-severe." *Conley v. Comm'r of Soc. Sec. Admin.*, 321 F. App'x 575, 579 (9th Cir. 2009); *see Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("[W]here, as here, the ALJ indicates he has considered all the evidence [the] practice is to take the ALJ 'at [his] word.'" (second alteration in original) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)); *Fessler v. Apfel*, 11 F. Supp. 2d 1244, 1252 (D. Colo. 1998) ("[I]f an ALJ states that he considered the entire record in making his decision, a reviewing court cannot assume otherwise." (internal citation to the record omitted)).

Here, however, the Court need not rely on such statements alone, because it is clear from the opinion as a whole Plaintiff's non-severe impairments were sufficiently considered in formulating the RFC. *See, e.g.*, *Wall*, 561 F.3d at 1070 (evaluating the ALJ's decision "in its entirety" to determine that "he adequately considered [the claimant's] alleged impairments"); *Rice v Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole[.]"). First, the ALJ specifically addressed Plaintiff's anxiety—an impairment the ALJ found non-severe at step two—when formulating the RFC, demonstrating that he did consider Plaintiff's non-severe impairments at that step.[13]   ECF No. 13-2 at 24, 30 (noting that, although the record evidence established "a history of ongoing anxiety," physical examinations "consistently revealed the claimant to be cooperative, alert and oriented x3 with an appropriate mood, affect and thoughts"). The

---

[13] Plaintiff reliance on *Cheryl S. v. Kijakazi* is misplaced. There, the court found reversible error because the ALJ's opinion "[did] not evidence any assessment of how [Plaintiff's] mental limitations, mild or not, impact her ability to perform he past work." Report and Recommendation at 23, *Cheryl S. v. Kijakazi*, No. 18-cv-1379 (D.D.C. May 4, 2022), ECF No. 17, *report and recommendation adopted*, Order (D.D.C. May 20, 2022), ECF No. 18.  By contrast, as discussed above, there is sufficient evidence of the ALJ's consideration of Plaintiff's non-severe impairments here in general, and of her one non-severe mental health impairment in particular—her anxiety—when formulating the RFC.  *See* ECF No. 13-2 at 28, 30 (ALJ expressly considering Plaintiff's non-severe anxiety when formulating the RFC).

ALJ's consideration of Plaintiff's anxiety was especially appropriate, given the ALJ's finding that her anxiety, although non-severe, caused some mild limitations in functioning.  *See* ECF No. 13-2 at 24–25.

Second, for each of the physical impairments found to be non-severe, the ALJ explained in detail at step two why he found them "not to have more than a minimal effect on the claimant's ability to perform basic work activities," citing medical evidence in the record.  *See id.* at 22–25. Where an ALJ's determination that an impairment is non-severe at step two is supported by substantial evidence—as it is here—a failure to explicitly discuss such an impairment in formulating the residual functional capacity does not generally require remand because the step two finding demonstrates that the impairment "did not significantly limit Plaintiff's ability to do basic work activities" and an ALJ "[is] not required to include a *non*-significant limitation in stating Plaintiff's residual functional capacity."  *Honcoop v. Barnhart*, 87 F. App'x 627, 629 (9th Cir. 2004); *see also Britt*, 860 F. App'x at 262 ("The discussion in step-two that these limitations had a minimal impact on vocation and were being managed tells us what impact these limitations had in the residual-functional-capacity analysis."); *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (holding that an ALJ's express reference to SSR 96-8p and discussion of non-severe impairments at step two are sufficient for an RFC to conform to the requirements of the regulations and SSR 96-8p); *Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir. 2004) (holding an ALJ is not required to incorporate into the RFC any non-severe impairments that do not impose limitations on a claimant's ability to work).  The ALJ's step two analysis and conclusion demonstrates to the Court's satisfaction that those same non-severe impairments would have no material impact on her RFC.  Thus, even if the ALJ's failure to expressly address the Plaintiff's non-severe impairments in the RFC's assessment was error, the Court has no difficulty determining that the error was

harmless, and sees no benefit in remanding the case so that "the administrative law judge [can] repeat himself" when formulating the RFC.  *Britt,* 860 F. App'x at 262; *see also Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (holding that an ALJ's opinion must be read as a whole such that analysis in one step is applicable throughout, as requiring otherwise would result in needless repetition).

Finally, it is the party seeking reversal of the decision that has the burden of proving an error was prejudicial—i.e., that the error potentially affected the disposition of the claim.  *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009); *Saunders*, 6 F.4th at 4 (in reviewing a final decision of the SSA under the substantial evidence standard, courts must "be mindful of the harmless-error rule").  Plaintiff makes no such showing here.  Her memorandum is devoid of any indication as to what additional limitations the ALJ should have included in her RFC in light of her non-severe impairments, much less that their inclusion would potentially have led to a finding of disability.  That failure to satisfy her burden to show that any error by the ALJ was prejudicial, is dispositive of her appeal on this issue.  *See Welch v. Colvin*, 566 F. App'x 691, 694–95 (10th Cir. 2014) (finding that any error in the ALJ's alleged failure to consider the effects of the claimant's non-severe impairments in combination with her severe impairments was harmless because the claimant did not identify how the non-severe impairments affected her functioning); *see also Shinseki*, 556 U.S. at 409–10; *Jamil D.*, 2022 WL 910334, at *16; 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1) ("[Y]ou have to prove to us that you are blind or disabled.").

### 3. The ALJ Appropriately Considered the Effect of the Combination of Plaintiff's Impairments.

Finally, Plaintiff argues that the ALJ failed to properly consider the combination of Plaintiff's impairments when formulating the RFC.  ECF No. 21-1 at 13.  Specifically, Plaintiff argues the ALJ inappropriately disregarded evidence of Plaintiff's mental impairments (*i.e.*, her anxiety)

and cardiac symptoms, and failed to explain how a notation of alertness and orientation during a physical examination indicates the individual does not suffer from fatigue. *Id*. at 14–15. The Court is not persuaded.

Plaintiff's suggestion that an ALJ commits error if the ALJ's opinion does not expressly state that all of the individual's impairments have been considered, both singularly and in combination, is incorrect. As with the prior issue involving an ALJ's consideration of non-severe impairments, the SSA statutory regime only requires an ALJ to "*consider* the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity" that it could be the basis for a finding of disability. 42 U.S.C. § 423(d)(2)(B)(emphasis added); *see also Martin v. Apfel*, 118 F. Supp. 2d 9, 15–16 (D.D.C. 2000) (finding that an ALJ is required to consider the cumulative effects of all claimant's ailments and, if relevant, medications). Although the ALJ here did not specifically discuss the combined effect of Plaintiff's impairments when formulating the RFC, courts have held that where, as here, an ALJ has carefully considered the entire record, including consideration of a claimant's impairments individually, that is sufficient to demonstrate the ALJ considered those same impairments in combination. For example, in *Emard*, the Sixth Circuit found that the ALJ's failure to "specifically discuss the combined effect of [the claimant's] impairments" did not require remand where "she stated that she had carefully considered the entire record and 'all symptoms'" and "considered the claimant's impairments individually"; the court reasoned that "'the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered,' and '[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable.'" 953 F.3d at 851 (second alteration in original) (quoting *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)); *see also Medina v. Social Sec. Admin*, 636 F.

App'x 490, 493 (11th Cir. 2016) (finding that an express indication an ALJ considered all symptoms and opinion evidence, together with a discussion of the limitations caused by a plaintiff's symptoms, are sufficient to show the ALJ considered the impairments in combination); *Hubbard v. Comm'r of Soc. Sec.*, 618 F. App'x 643, 649 (11th Cir. 2015) (similar); *Simons v. Barnhart*, 114 F. App'x 717, 734 (6th Cir. 2004) (finding no error from an alleged failure to consider the combined effect of a claimant's impairments where, although the ALJ "did not separately discuss [her] multiple impairments," he "specifically stated he was obligated to consider all symptoms" and found that the claimant "had an impairment, or combination of impairments, which was severe"). Applying that standard here, the ALJ's opinion passes muster.

As an initial matter, the ALJ demonstrated that he knows what the law requires. The opinion's legal discussion states the legal standard that Plaintiff asserts the ALJ ignored here:  that disability is defined under the Social Security Act as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment *or combination of impairments*." ECF No. 13-2 at 20 (emphasis added). Immediately after that statement of law, the ALJ stated his conclusion regarding Plaintiff's alleged disability: "after careful consideration of all the evidence, . . . [Plaintiff] has not been under a disability within the meaning of the Social Security Act from December 15, 2017, through the date of this decision." *Id.*  As before, the Court will take the ALJ "at [his] word" and conclude that he properly applied the legal standard he had just articulated in the opinion and considered Plaintiff's impairments in combination when reaching the ultimate conclusion that she was not disabled.  *Wall*, 561 F.3d at 1070 (quoting *Flaherty*, 515 F.3d at 1071).

Moreover, the ALJ considered the entire record, including all of Plaintiff's symptoms, in reaching the RFC determination.  At the outset of the RFC analysis, the ALJ stated that he reached

that determination only after "careful consideration of the entire record." *Id.* at 26.  He also stated that he had "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ then explicitly listed Plaintiff's alleged symptoms, including her fatigue, abdominal swelling, shortness of breath, chest tightness, heart palpitations, right hip pain, left arm pain, back pain, joint pain, brain fog and memory and concentration problems, and sleep disturbance, as well as her claims that she could not lift more than ten pounds or walk more than four to five blocks without stopping and resting. *Id.* at 27.  Next, the ALJ assessed all of Plaintiff's alleged symptoms against the objective medical evidence.  As to Plaintiff's musculoskeletal pain, the ALJ noted multiple physical examinations that revealed a full range of motion in all extremities with intact strength and sensation, and an x-ray of the lumbar spine that revealed only "mild degenerative changes." *Id.*  As to Plaintiff's trapezius strain, the ALJ noted similar findings. *Id.* at 27–28.  As to Plaintiff's coronary artery disease, hypertension, and allegations of chest tightness and shortness of breath, the ALJ noted multiple physical examinations which revealed a regular heart rate and rhythm, with normal blood pressure and no obvious cardiopulmonary distress. *Id.* at 28.  As to Plaintiff's macromastia, menopause, and allegations of fatigue, the ALJ noted multiple physical examinations which showed Plaintiff to be "alert and oriented x3," with no gynecologic complaints, and a mammogram and physical examination which revealed no evidence of breast masses. *Id*.  As to Plaintiff's abdominal swelling, the ALJ noted multiple physical examinations which revealed a soft, supple, nondistended abdomen with normal bowel sounds, no tenderness to palpitation, and a normal mucosal fold, and a small bowel study which was unremarkable with no evidence of mass lesions. *Id*.  As to Plaintiff's allegations of brain fog and memory and concentration

issues, the ALJ noted multiple physical examinations which showed Plaintiff to be "alert and ori-

ented x3" with intact cranial nerves.  *Id.*

The ALJ then considered Plaintiff's subjective complaints and found them to be incon-

sistent with her activities of daily living, which included an ability to "prepare simple meals, shop

in stores and by computer, clean, watch television, pay bills[,]. . . use public transportation[,] . . .

go outside every day except in extreme weather[,] and . . . [take] frequent[] [trips] to the library."

*Id*. at 29.  Finally, the ALJ considered the medical opinion evidence, which, as discussed above,

connected specific limitations in the RFC to the medical opinions which he found persuasive.  *Id.*

at 29–31.  In conclusion, the ALJ stated that:

> based upon the totality of the evidence, including objective findings, the [Plain-
> tiff's] course of treatment, and her activities of daily living, all of which have been
> discussed above in this decision, and in giving some consideration to the statements
> and testimony of the [Plaintiff] regarding her subjective complaints and functional
> limitations, the undersigned finds that the [Plaintiff's] impairments and restrictions
> caused by them would not prevent the [Plaintiff] from performing the residual func-
> tional capacity set forth" in the opinion.

*Id*. at 31.  Based on that record, the Court has no trouble concluding that the ALJ considered all of

Plaintiff's impairments, both singularly and in combination, when determining her RFC.  *See*

*Emard*, 953 F.3d at 851; *Medina*, 636 F. App'x at 493; *Hubbard*, 618 F. App'x at 649.

Plaintiff's argument that the ALJ specifically disregarded the evidence of her anxiety, as

well as her cardiac symptoms, shortness of breath, chest tightness, and heart palpitations, is una-

vailing. ECF No. 21-1 at 14-15.  As discussed above, the ALJ specifically considered each of these

alleged impairments and/or symptomatology within the RFC assessment, comparing them against

the objective and opinion medical evidence.  *Id* at 27 (listing Plaintiff's subjective complaints of

fatigue, shortness of breath, chest tightness, and heart palpitations); 28 (addressing claimant's

coronary artery disease, hypertension, and allegations of chest tightness, shortness of breath, and fatigue); 30 (assessing Plaintiff's "history of ongoing anxiety").

Finally, Plaintiff's argument that her being alert and oriented at a doctor's visit does not undermine her subjective complaint that she suffers from fatigue, fails. Although such medical evidence may not be dispositive, the ALJ properly determined these findings to be a relevant consideration in assessing her claims of fatigue. *See Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) (finding that medical observations that the claimant was "well-oriented" undermined his subjective complaints of fatigue); *McKinney v. Apfel*, 228 F.3d 860, 864 (8th Cir. 2000) (finding that mental examinations indicating that the claimant was "alert" supported the ALJ's determination that he was not disabled due to fatigue). Additionally, it was not the only consideration the ALJ took into account when assessing Plaintiff's claim of disabling fatigue. The ALJ also considered Plaintiff's activities of daily living. Although Plaintiff "testified that she spends the majority of the day lying down," the ALJ noted that Plaintiff had reported that she was "able to prepare simple meals, shop in stores and by computer, clean watch television, pay bills[,]. . . use public transportation[,] . . . go outside every day except in extreme weather[,] and . . . [take] frequent[] [trips] to the library." ECF No. 13-2 at 29. The ALJ reasonably found such activities to be inconsistent with Plaintiff's subjective allegations, including that she suffered from disabling fatigue. *See, e.g.*, *Crowder v. Astrue*, 784 F. Supp. 2d 217, 220–21 (W.D.N.Y. 2011) (finding daily activities including personal care, short shopping trips, some socializing, and weekly churchgoing, "punctuated by frequent naps" to be "largely inconsistent" with complaints of disabling fatigue); *see also Davis v. Saul*, No. 18-cv-204, 2020 WL 3542232, at *4 (D.D.C. June 30, 2020) (the assessment of a Plaintiff's subjective reports of pain and other symptoms "'is solely within the realm of the ALJ' and is only to be disrupted when 'an ALJ fails to articulate a rational explanation for

his or her finding'" (quoting *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012))).  The ALJ also took into account that, although Plaintiff complained that one of the side effects of her medicine was fatigue, the "medical records do not include any significant complaints related to ongoing medication side effects or recurrent requests for medication adjustments due to side effects."  ECF No. 13-2 at 28.

Based on that record, the Court finds no error in the ALJ's treatment of the Plaintiff's allegations of disabling fatigue.

## IV.    CONCLUSION

For the reasons stated above, the Court will enter an Order **DENYING** Plaintiff's motion for judgment of reversal (ECF No. 21) and **GRANTING** Defendant's motion for judgment of affirmance (ECF No. 22).

Date:  Sept. 18, 2023

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE